**E-Filed 1/5/09**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CHRISTIAN HAMMERL,

                Plaintiff,

      v.

ACER EUROPE, S.A., a Swiss corporation; and
ACER AMERICA CORPORATION, a California
corporation,

              Defendants.

Case Number C 08-4754 JF (RS)

**ORDER[1] GRANTING MOTION TO
REMAND**

     Plaintiff Christian Hammerl ("Plaintiff") filed this action in the Santa Clara Superior
Court on September 15, 2008, alleging a breach of contract and violations of the California
Labor Code.  Plaintiff named Acer Europe S.A., a Swiss corporation, and Acer America
Corporation as defendants, alleging that these entities are liable to Plaintiff as his joint
employers.  Although it is undisputed that Defendant Acer America is a California citizen for
purposes of diversity jurisdiction, Acer America removed the action to this Court on October 15,

---

    [1] This disposition is not designated for publication in the official reports.

1  2008 on the ground that its joinder was a "sham."  Under the so-called fraudulent joinder

2  doctrine, the joinder of a party will be considered a sham–and thus ignored for diversity

3  purposes–only if there is no possibility that the plaintiff could state a claim against that party.

4  Plaintiff moves to remand this action to the Superior Court on the basis that Acer America is a

5  proper defendant whose presence destroys diversity.  As set forth in detail below, Acer America

6  falls far short of showing that its joinder was fraudulent, and Plaintiff's motion to remand will

7  be granted.[2]

8                                    **I. BACKGROUND**

9         Plaintiff is an Austrian-born citizen of the United States who currently resides in

10  Oakland, California, and is admitted to practice law in New York and California.  Hammerl

11  Decl. ¶¶ 2-3.  In 1997, Plaintiff was offered a position as Corporate Counsel with Defendant

12  Acer America.  Plaintiff accepted the position and began working at Acer America's San Jose,

13  California, office.  *Id*. ¶ 4 & Ex. A.  In connection with his employment, Plaintiff received an

14  Acer America employee badge and was paid wages by Acer America, which reported itself as

15  Plaintiff's employer on his Form W-2 filing for federal and state income tax purposes.  *Id*. ¶¶ 4-

16  5.  Plaintiff also participated in Acer America's health and other benefit plans, including Acer

17  America's 401(k) plan.  *Id*.

18         In September 2004, Plaintiff and Defendant Acer Europe S.A. entered into a written

19  employment agreement ("Employment Agreement").  *See* Hammerl Decl., Ex. B.  The

20  Employment Agreement, which became effective on January 1, 2004, provided that Plaintiff

21  was to be the "head of Acer's legal department responsible for operations" in Acer's Europe,

22  Middle East, African, and Pan-American regions.  *Id*. ¶ 9.  Specifically, the Employment

23  Agreement stated that

24  _____

25         [2] Defendant Acer America also moves (1) to dismiss the complaint for failure to state a
26  claim upon which relief may be granted, (2) to strike portions of the complaint, and (3) for a
   more definite statement with respect to the use of the term "wages" in the complaint.  In addition,
27  Defendant Acer Europe moves to dismiss for insufficient service of process and lack of personal
   jurisdiction.  Because this action will be remanded to the Superior Court, the foregoing motions
28  will be terminated as moot.

Case No. C 08-4754 JF (RS)
ORDER GRANTING MOTION TO REMAND
(JFLC3)

your principal employer shall be the Company [Acer Europe], that notwithstanding, it is agreed that you shall be placed on permanent secondment to San Jose, California, our headquarters for the Pan America region, and for the duration of such secondment, San Jose shall be for both parties the contractual place of performance.  To facilitate this arrangement the Company may employ local affiliate companies to perform certain of its obligations ('facultas alternativa') such as the provision of office facilities, support staff, health care and retirement benefits, and banking holidays.  Any payments and benefits received locally shall be counted against your overall entitlement vis a vis [sic] the Company.

Employment Agreement, ¶ 4.  The Employment Agreement also contained a choice of law clause providing that

[t]he validity, interpretation, construction, and performance of this contract shall be governed by the laws of Switzerland applicable to contracts entered into and performed in Switzerland, except for the peremptory norms of the law of the contractual place of performance if outside Switzerland.

Employment Agreement, ¶ 12(f).  Around the same time, Plaintiff and Acer Europe signed a separate contract–apparently merely to comply with formalities of Italian law, and purporting on its face merely to reflect the obligations of the Employment Agreement–stating that Plaintiff would be Acer Europe's Director, Legal Affairs, only "for a part time 25% position." *Id*. ¶ 11 & Ex. C.

After executing both agreements, Plaintiff continued to work at Acer America's San Jose office.  Plaintiff continued to have an Acer America badge, to be paid approximately seventy-five percent of his contractual salary by Acer America (which continued to list itself as his employer on all Form W-2 filings), and to participate in Acer America's health and other employee benefit programs. *Id*. ¶ 12.  Although the Employment Agreement initially was set to expire on December 31, 2006, Plaintiff and Acer Europe amended it on September 1, 2006 to continue indefinitely. *Id*. ¶ 13 & Ex. D.

On June 20, 2008, Plaintiff received a letter from Acer Europe dated June 16, 2008 and stating the following: "We are very sorry to communicate . . . to you the intention of our Company to terminate the ongoing employment relationship with you.  Such termination shall be immediately effective." *See id*. ¶ 28 & Ex. I.  Acer Europe was silent with respect to whether the termination was for cause. *Id*.  A separate letter dated June 25, 2008 and written by a human resources manager for Acer Europe confirmed that on June 20, 2008, an agent of Acer Europe

3

1   had "discussed with you the termination of your Employment Agreement and handed out the

2   termination letter to you." *Id*. ¶ 29 & Ex. J.  Plaintiff also received a letter dated June 26, 2008,

3   co-signed by the controller of Acer Europe and a member of Acer Europe's Administrative

4   Counsel, referring to "our letter of Termination of the Employment Agreement delivered to you

5   on June 20, 2008," and informing Plaintiff that several company credit cards in his possession

6   had been cancelled.  The letter also instructed Plaintiff to return "all the files in your hands and

7   whose [sic] you are responsible . . . to the Human Resources Director of Acer America." *Id*. ¶

8   30 & Ex. K.  Towards the end of June 2008, Acer America ceased paying Plaintiff the seventy-

9   five percent share of his salary due to him.  *Id*. ¶¶ 31, 33, & Ex. M.  Plaintiff alleges that Acer

10  America has not paid Plaintiff the salary he is owed under the Employment Agreement or his

11  unused vacation pay earned from Acer America through June 2008.

## II. FRAUDULENT JOINDER

13      While federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 ordinarily requires

14  complete diversity of citizenship, *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495,

15  499 (9th Cir. 2001), the fraudulent joinder doctrine permits a court to ignore a non-diverse

16  party's citizenship if that party's joinder to the action was a "sham." *Good v. Prudential Ins.*

17  *Co.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  "There is a presumption against finding

18  fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry

19  a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F. Supp. 2d 1005,

20  1007 (N.D. Cal. 2001) (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712

21  n.3 (9th Cir. 1990)).  Joinder is considered fraudulent or a sham only "[i]f the plaintiff fails to

22  state a cause of action against a resident defendant, and the failure is *obvious* according to the

23  settled rules of the state." *Id*. at 1008 (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336,

24  1339 (9th Cir. 1987) (emphasis added)).  The removing party therefore must "prove that there is

25  *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the

26  in-state defendant in state court." *Id*. (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44

27  F.3d 256, 259 (5th Cir. 1995) (emphasis added)).

28      The "evaluation of fraudulent joinder claims does not anticipate a judgment on the

4

merits, but merely considers whether there is any possibility that the plaintiff might prevail."

*Easley v. 3M Co.*, No. C 07-03507, 2007 WL 3217536, at *2 (N.D. Cal. Oct. 29, 2007) (quoting

*Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996)).

In determining whether joinder of a defendant was a fraudulent or a "sham," the Court "may

look beyond the pleadings and consider affidavits or other evidence to determine if the joinder

was a sham." *Plute*, 141 F. Supp. 2d at 1008 (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d

1061, 1068 (9th Cir. 2001)). The Court "must resolve 'all disputed questions of fact and all

ambiguities in the controlling state law in favor of the non-removing party.'" *Id.* (quoting

*Dodson*, 951 F.2d at 42-43). In addition, "[a]ll doubts concerning the sufficiency of a cause of

action because of inartful, ambiguous or technically defective pleading must be resolved in favor

of remand, and a lack of clear precedent does not render the joinder fraudulent." *Id.* (quoting

*Archuleta v. American Airlines, Inc.*, No. CV 00-1286 MMM, 2000 WL 656808, at *4 (C.D.

Cal. May 12, 2000)).

## III. DISCUSSION

In attempting to show that there is "absolutely no possibility" that Plaintiff can state a

claim against it, Acer America first argues that the choice of law clause contained in the

Employment Agreement requires the application of Swiss law, thus foreclosing Plaintiff's

California Labor Code claim and, according to Acer America, his breach of contract claim as

well. Acer America then argues that even if California applies, Plaintiff (1) cannot state a claim

for violations of the California Labor Code because Acer America is not Plaintiff's employer, as

defined by California law, and (2) cannot state a claim for breach of contract because Acer

America neither signed the Employment Agreement nor undertook to perform any obligations

thereunder. The Court addresses each argument in turn.

**A.     Choice of law**

In determining whether Swiss law or California law applies to each of Plaintiff's claims,

the Court must consider both the operation of the choice of law clause itself and, assuming

hypothetically that the clause required the application of Swiss law, the possibility that California

law nonetheless might apply under the applicable conflict of laws regime. The interpretation of

5

1   the choice of law clause turns on the meaning of the "peremptory norms of the law of the

2   contractual place of performance if outside Switzerland."  Plaintiff argues that the relevant

3   California Labor Code provisions, which are widely recognized to be fundamental and generally

4   non-derogable policies of the State of California, fall within the "peremptory norms" exception.

5   Acer America contends that the exception does not apply, and that the clause's requirement that

6   the "[t]he validity, interpretation, construction, and performance of this contract shall be

7   governed by the laws of Switzerland" covers any action arising from the Employment

8   Agreement.  With respect to the possibility that inconsistent provisions of California law might

9   prevail over Swiss law, Plaintiff argues that the fundamental public policy embodied in the

10  California Labor Code requires the application of California law under California's conflict of

11  laws regime.  Because the operation of the choice of law clause and the effect of California's

12  conflict of laws regime may differ in their relation to each claim, the Court organizes its

13  discussion by claim.

14          **1. California Labor Code Claim**

15          **a. Interpretation of the choice of law-of-law clause**

16          The Employment Agreement states that "San Jose shall be for both parties the contractual

17  place of performance."  Thus, the "peremptory norms of the law of the contractual place of

18  performance" referred to in the choice of law clause necessarily are those of California.  Plaintiff

19  argues that §§ 201 and 203 of the California Labor Code embody fundamental public policies of

20  the State of California, and that these policies are precisely the sort of peremptory norms

21  contemplated by the Employment Agreement.  Section 219 of the California Labor Code declares

22  that "no provision in this article [including §§ 201 and 203] can in any way be contravened or set

23  aside by private agreement, whether written, oral or implied."  In light of this policy, the

24  California Supreme Court has held that "the prompt payment of wages due an employee is a

25  fundamental public policy of this state . . . , and the Legislature clearly had that important public

26  policy in mind in enacting various provisions of the Labor Code[,] a[including] §§ 201-203."

27  *Smith v. Rae-Venter Law Group*, 29 Cal. 4th 345, 360 (Cal. 2002) (quotation marks and citations

28  omitted).  *See also Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995).

6

1    Acer America argues that the "peremptory norms" referred to in the Employment

2    Agreement are those better known in the context of international law.  Under customary

3    international law, a peremptory norm is one that is "accepted and recognized by the international

4    community as a whole as a norm from which no derogation is permitted," *Siderman de Blake v.*

5    *Republic of Argentina*, 965 F.2d 699, 714 (9th Cir. 1992), and which is "derived from values

6    taken to be fundamental by the international community," *id*. at 715.  This interpretation of the

7    "peremptory norms" referred to in the Employment Agreement almost certainly is incorrect.

8    First, it would be illogical for a contract to specify "norms *of the place of contractual*

9    *performance*" if such norms had to be universal and non-derogable.  Second, Plaintiff has

10   provided the declaration of a Swiss lawyer attesting that "[u]nder Swiss law, a peremptory norm

11   of the law of the contractual place of performance is one that is connected with an important

12   public policy or policies of the country or jurisdiction of the contractual place of performance . . .

13   [,] [including] the laws of a foreign country or jurisdiction dealing with labor protection,

14   consumer protection, export controls, product safety, and similar subjects."  Mathiassen Decl., ¶¶

15   10-11.  Plaintiff's evidence, which is the only evidence of Swiss law before the Court law on this

16   point,[3] specifically rebuts the notion that the peremptory norms referred to in the contract are

17   coextensive with, or even related to, those of international law.  *See* Mathiassen Decl., ¶ 12.

18   Beyond the obvious and natural congruence of the phrases "peremptory norms" and

19   "fundamental public policies," the only apposite assertion of Swiss law before the Court supports

20   Plaintiff's interpretation.  The alleged Labor Code violations thus appear to fall squarely within

21   the meaning of "peremptory norms," meaning that at least as to those claims, California law

22   would seem to apply.

23                **b. Conflict of laws**

24        Even if the choice of law clause required the application of Swiss law in all instances, the

25

26   _____

27   [3] "[T]he party who claims that the foreign law is different from the local law of the forum
     has the burden of establishing the content of the foreign law."  *Bel-Ray Co., Inc. v. Chemrite*
28   *(Pty) Ltd.*, 181 F.3d 435, 441 (3d Cir. 1999) (quoting Restatement (Second) Conflict of Laws §
     136 cmt. f (1971)).

7

1   clause might well be subordinated to provisions of California law that embody fundamental

2   public policies of the State of California.  When forum law is in conflict with the law of a foreign

3   state, federal courts sitting in diversity look to the forum state's rules for resolving such conflicts.

4   California generally follows the analysis set forth in §§ 187-188 of the Restatement (Second) of

5   Conflicts of Law.  *See, e.g.*, *In re Marriage of Crosby & Grooms*, 116 Cal. App.4th 201, 210

6   (2004).  Under the Restatement approach, a contractual choice of law provision will not be

7   enforced if, inter alia,

8         application of the law of the chosen state would be contrary to a fundamental
          policy of a state which has a materially greater interest than the chosen state in the
9         determination of the particular issue and which, under the rule of § 188 [providing
          a list of relevant contacts], would be the state of the applicable law in the absence
10        of an effective choice of law by the parties.

11   Restatement § 187(2).  Thus, even absent the "peremptory norms" exception, which appears

12   clearly to authorize Plaintiff's claims under the California Labor Code, California law would

13   apply if (1) §§ 201 and 203 of the labor code embody a fundamental policy of the State of

14   California, (2) California's interest in applying §§ 201 and 203 is materially greater than

15   Switzerland's interest in applying its law; and (3) California law would apply absent the parties'

16   selection of Swiss law.  As already discussed, the relevant provisions of the labor code are

17   fundamental public policies of the State of California.  In addition, Plaintiff is a citizen of

18   California who, until his recent termination, was employed in California.  Given California's

19   important "interest in protecting employees of its state, and enforcing [its] wage laws," *Allison v.*

20   *Danilovic*, No. B163363, 2004 WL 2797988, at *4 (Cal. App. 2 Dist. 2004), it is difficult to see

21   how Switzerland's interest in seeing its law applied to a labor dispute in California would be

22   greater than California's interest.

23         Finally, in determining what law would govern absent the parties' contractual choice of

24   law, the Restatement directs courts to consider certain contacts with the respective states and to

25   assess their relative importance given the nature of the dispute.  Restatement § 188.  These

26   contacts are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place

27   of performance; (4) the location of the subject matter of the contract, and (5) the domicile,

28

8

1   residence, nationality, place of incorporation, and place of business of the parties.  *Id.*[4]  In the

2   instant case, the place of performance, the location of the subject matter of the contract, and, to

3   some extent, the "place of business of the parties" appear to favor a finding that California law

4   would apply absent the parties' contractual choice of law.  Additionally, the foregoing contacts

5   appear to be "relative[ly] [more] importan[t] given the nature of the dispute," which turns entirely

6   on Plaintiff's employment in California.  In short, not only does the choice of law clause itself

7   appear to call for the application of California law with respect to the alleged Labor Code

8   violations, but even if it did not, California's conflict of laws regime might well compel the

9   application of California law.

10          **2. Breach of contract claim**

11          Whether California or Swiss law applies to Plaintiff's breach of contract claim is a closer

12   question.[5]  As an initial matter, it is at best unclear whether Plaintiff could tether his breach of

13   contract claim to any of the fundamental public policies embodied in California's labor laws so

14   as to bring his breach of contract claim within the "peremptory norms" exception to the choice of

15   law clause.  If that exception does not apply, it seems reasonably clear that Swiss law would

16   govern the contract claim.  As the California Supreme Court held in *Nedlloyd Lines*, the

17   requirement in a choice of law clause that disputes be "governed by" a particular law means that

18   the agreement is to be controlled "completely and absolutely" by that law.  *Nedlloyd Lines B.V. v.*

19   *Superior Court*, 3 Cal.4th 459, 469 (1992).[6]  Thus, at least on its face, the clause appears to

20   _____

21          [4] The Restatement instructs that these contacts should be considered in light of certain
22   general principles, which include: (1) the needs of the interstate and international systems; (2) the
     relevant policies of the forum; (3) the relevant policies of other interested states and the relative
23   interest of those states in the determination of the particular issue; (4) the protection of justified
     expectations; (5) the basic policies underlying the particular field of law; (6) certainty,
24   predictability, and uniformity of result, and (7) ease in the determination and application of the
     law to be applied.  Restatement § 6(2).
25
          [5] As explained *infra* at Section III.B.2, it is unclear whether there really is a conflict
26   between Swiss law and California law with respect to the relevant principles of contract law.

27          [6] In so holding, the Court emphasized that "[n]o exceptions [were] provided" in the
28   clause at issue.  *Nedlloyd Lines*, 3 Cal.4th at 469.  In the instant case, there is, of course, a broad

9

require the application of Swiss law to the breach of contract claim.  Moreover, for the same reasons that the "peremptory norms" exception to the choice of law clause seemingly would not apply to the breach of contract claim, that claim also would appear not to supersede Swiss law under a conflict of laws analysis.[7]

**B.    Sufficiency of claims**

**1. Labor Code Violations**

Plaintiff alleges violations of §§ 201 and 203 of the Labor Code primarily on the basis of Acer America's alleged failure to pay his accrued but unused vacation time upon terminating him.  Acer America argues that it cannot be held liable for violations of the Labor Code because it was not Plaintiff's employer.  As explained below, the current record suggests that Acer America *was* Plaintiff's employer.  Moreover, even if the record did not so suggest, the contrary inference–which is a prerequisite to Acer America's argument of fraudulent joinder–is anything but "obvious."[8]

Under California law, "[t]he principal test of an employment relationship . . . is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *Torres v. Reardon*, 3 Cal. App. 4th 831, 837 (1992) (citing

---

exception provided in the choice of law clause, and the only question is whether it is broad enough to cover Plaintiff's breach of contract claim.

[7] Where a choice of law clause is phrased in absolute terms and without exceptions, such as in *Nedlloyd Lines*, it might appear unlikely that a "businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship."  *Nedlloyd Lines*, 3 Cal. 4th at 469-70.  However, where the clause contains a broad exception reflecting deference to the local policies of a jurisdiction whenever such policies apply, it is not illogical to assume that the clause contemplates the application of different laws to different claims in certain circumstances.

[8] Acer America argues in its opposition that Plaintiff's action is unripe because Plaintiff has not been terminated by Acer Europe.  Acer America states that Plaintiff was not scheduled to be terminated officially until November 30, 2008.  *See* Def.'s Opp. at 23:18-19.  It is doubtful whether any technical delay in terminating Plaintiff would prevent him from bringing this action, given the unmistakable clarity of the letters he received from Acer Europe terminating him "immediately."  In any event, the date of termination having passed, this point is now moot.

1    Cal. Labor Code §§ 2750.5(a) & 3353 and *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,

2    48 Cal. 3d 341, 350 (1989)).  "A person's status as an employee . . . is a question of fact, but may

3    be determined as a matter of law if all material facts are undisputed." *Plute*, 141 F. Supp. 2d at

4    1009 (citing *S.G. Borello*, 48 Cal. 3d at 349).  For purposes of §§ 201 and 203, the California

5    Division of Labor Standards Enforcement ("DLSE") states in its Enforcement Manual that "[t]he

6    definition of employer for purposes of California labor laws . . . . [encompasses] any person . . .

7    who directly or indirectly, or through an agent or any other person, employs or exercises control

8    over the wages, hours or working conditions of any person."  DLSE Enforcement Manual § 2.2

9    (2008 Rev. Ed.).  The Enforcement Manual also states that "it is important to note that there may

10   be more than one entity responsible for the payment of wages or other benefits.  The broad

11   definition of 'employer' for purposes of wage and hour law . . . potentially allows more than one

12   person to be liable for unpaid wages and penalties."  *Id*. § 37.1.2.

13         Plaintiff claims that Acer America and Acer Europe were his joint employers from 2004

14   through his termination in 2008.  Plaintiff first points to the Employment Agreement, which

15   refers to Acer Europe as his "*principal*"–and thus not *sole*–employer: "Your principal employer

16   shall be [Acer Europe], that notwithstanding, it is agreed that you shall be placed on permanent

17   secondment to San Jose, California."  Plaintiff then asserts that the term "secondment" signifies

18   "the loaning of an employee by an employer to another to perform work on behalf of the second

19   employer," and that "[i]f the other employer has the right to direct and control the details of the

20   particular work, the person becomes the employee of the other."  Pl.'s Reply, at 11:4-13 (quoting

21   *Deloitte & Touche Netherlands Antilles & Aruba v. Ulrich*, 172 S.W.2d 255, 265 (Tex. Ct. App.

22   2005)); *accord Caso v. Nimrod Productions, Inc.*, 163 Cal. App. 4th 881, 888-89 (2008)

23   (discussing similar concept under the doctrine of special employment).

24         In addition to Acer America's apparent payment of seventy-five percent of Plaintiff's

25   salary, its filing of various tax forms as Plaintiff's "employer," and its provision of retirement,

26   health, and other benefits through its employee programs, Plaintiff points to the following indicia

27   of an employer-employee relationship: (1) Acer America's direct control over legal assignments

28   to Plaintiff and others in the legal department, Hammerl Decl. ¶ 18; (2) the requirement that

                                                    11

1  Plaintiff attend mandatory sexual harassment training for managerial employees, as required of

2  employers pursuant to California Government Code § 12950.1, Hammerl Decl., ¶ 19; (3) the

3  administration of health care benefits by Acer America, *id.* ¶ 20; (4) from 2004 onward, the

4  requirement that Plaintiff file his requests for sick leave or Paid Time Off in Acer America's

5  electronic system, and the authority of Acer America's President over the disposition of those

6  requests, *id.* ¶ 20; (5) the requirement that Plaintiff obtain permission from Acer America's

7  President before recruiting and hiring legal personnel, including replacement hires, *id.* ¶ 21; (6)

8  the control by Acer America's management over the size and location of Plaintiff's office space

9  and his access to equipment and furniture, to the extent that Acer America's president informed

10  Plaintiff that he was required to use a second-hand laptop computer because he was "subject to

11  Acer America's policies like anybody else," *id.* ¶ 22; (7) the condition that Plaintiff's travel

12  reimbursement requests were subject to Acer America's policies and had to be processed by Acer

13  America; and (8) the appearance of a "dotted line" reporting relationship between Plaintiff and

14  the president of Acer America on an organizational chart released in 2005, *id.* ¶ 26 & Ex. H.

15       The foregoing facts, which appear largely to be undisputed,[9] suggest that Acer America

16  exercised a degree of control over Plaintiff's wages and working conditions even greater than that

17  required to qualify it as Plaintiff's employer within the meaning of §§ 201 and 203 of the

18  California Labor Code.  Acer America does dispute the *significance* of these facts, but its

19  arguments in that regard are largely unpersuasive.  For example, in response to evidence that it

20  issued Plaintiff's paychecks and appeared as Plaintiff's employer on state and federal tax filings,

21  Acer America cites *Kenny v. Regis Corp.*, No. C 06-7521 CRB, 2008 WL 686710, at *12 (N.D.

22  Cal. Mar. 10, 2008), for the proposition that the issuance of "employees' paychecks and

23  appear[ance] as their employer on the W-2 statements is, *without more*, insufficient" to establish

24

---

25       [9] There is a factual dispute over the relevance of Acer America's payment of Plaintiff's

26  wages.  Acer America claims that it was reimbursed by Acer Europe for those wages.  *See* Def.'s
    Opp. at 14:15-18.  Plaintiff counters that Acer Europe paid Acer America a single sum to cover

27  multiple expenses in addition to Plaintiff's salary, and that the sum in any event was insufficient
    to cover all of Plaintiff's salary, with Acer America paying the balance.  *See* Pl.'s Reply at 10:21-

28  11:1 (citing Hammerl Supp. Decl., ¶¶ 3-4).

1   that an entity is an individual's employer. *Id*. (emphasis added).  Yet in *Kenny*, there was "*no*

2   *evidence* that [the parent corporation] *in any way* controlled the job duties or working conditions

3   of [the] employees, including plaintiff." *Id*. (emphasis added).  By contrast, all of the above

4   evidence indicates that Acer America did precisely that.  The Court finds unpersuasive Acer

5   America's attempts to characterize itself as a mere payroll company.

6          Similarly unpersuasive is Acer America's response to Plaintiff's assertion that the

7   President of Acer America controlled the assignment of legal work, including to Plaintiff.  Acer

8   America responds only that "this allegation neglects the fact that Plaintiff was an employee of

9   only Acer Europe." Def.'s Opp. at 19:12-14.  As Plaintiff points out, this reasoning is circular

10  and begs the ultimate question of whether Acer America *also* was Plaintiff's employer.  Next, in

11  response to evidence that the President of Acer America exercised control over the hiring process

12  for which Plaintiff directly was responsible, Acer America argues that, "even if true, at most, it

13  may show that Acer America had some control over the Associate Corporate Counsel's hiring."

14  Def.'s Opp. at 20:9-10.  But that is not "at most" what the evidence tends to show; in fact, it

15  suggests direct control over the manner in which Plaintiff discharged his duties as an employee.

16  Finally, confronted with the assertion that Plaintiff's sick leave pay and travel reimbursement

17  were subject to the approval of Acer America's president, Acer America does not deny the truth

18  of the assertion but attempts to minimize its importance by pointing to a lack of evidence that

19  Plaintiff's requests ever were denied.  However, the *manner* in which Acer America exercised

20  the purported control does not disprove that it *had* such control.  In short, while Acer America

21  may dispute the relevance of certain facts, it falls far short of demonstrating the absolute

22  impossibility of Plaintiff stating a claim for violations of the Labor Code.

23          **2. Breach of contract**

24          While the likely viability of Plaintiff's Labor Code claim against Acer America renders a

25  discussion of the breach of contract claim unnecessary in the present context, the Court briefly

26  will address the latter claim lest there be any doubt that Acer America's joinder was not

27  fraudulent.  Defendant argues (1) that the breach of contract action is barred categorically under

28  Swiss law because Acer America was not formally a party to the Employment Agreement, and

13

1   (2) that even under California law, Acer America cannot be held liable for a breach of the

2   Employment Contract because it neither signed that contract nor undertook to perform any

3   obligations under it.  In response, Plaintiff argues (1) that Swiss law contains no such categorical

4   bar to third-party actions on a contract, and (2) that Acer America may be held liable for breach

5   of the Employment Agreement under California law because it "assumed and performed a

6   substantial portion of Acer Europe's obligations to Plaintiff under the Employment Agreement."

7   Pl.'s Mot. to Remand, at 2:11-14.

8       "[T]he party wh[ich] claims that the foreign law is different from the local law of the

9   forum[,] has the burden of establishing the content of the foreign law."  *Bel-Ray Co., Inc. v.*

10   *Chemrite (Pty) Ltd.*, 181 F.3d 435, 441 (3d Cir. 1999) (quoting Restatement (Second) Conflict of

11   Laws § 136 cmt. f (1971)).  If the party asserting foreign law fails to carry that burden, "the

12   forum will usually decide the case in accordance with its own law."  *Id.* (quoting Restatement

13   (Second) Conflict of Laws § 136 cmt. h (1971)).  A court may conduct its own research into the

14   content of foreign law, but it is under no obligation to do so.  *See* Fed. R. Civ. P. 44.1 (providing

15   rules governing courts' consideration of foreign law); *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447

16   F.3d 212, 216 (3d Cir. 2006) ("[Rule 44.1] provides courts with broad authority to conduct their

17   own independent research to determine foreign law but imposes no duty upon them to do so.")

18   (citation omitted); *see also Universe Sales Co., Ltd. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1038

19   (9th Cir. 1999).  Thus, Acer America bears the burden of demonstrating the content of Swiss law

20   and how it differs from California law, and if Acer America fails to carry that burden, California

21   law properly may be applied.

22       In attempting to demonstrate that Plaintiff cannot state a claim against it as a non-party to

23   the Employment Agreement under Swiss law, the *sole* evidence of Swiss law that Acer America

24   offers is the following statement by a Swiss lawyer: "Generally, under Swiss law, a claim for

25   breach of contract can only be brought against an entity that is, formally or materially, a party of

26   the contract."  Solari Decl. ISO Def.s' Mot. to Dismiss, ¶ 4.  This purported bar to actions against

27   third-party non-signatories to a contract contains two major qualifying words: "generally" and

28   "materially."  These qualifying words prevent the Court from attributing to this evidence of

14

1   Swiss law the meaning that Acer America urges.  First, a survey of California law might well

2   suggest that third parties "generally" may not recover on a contract, but that they may do so under

3   the third-party beneficiary doctrine–an "exception" to the general rule.  Second, Acer America's

4   evidence of Swiss law itself suggests that an action for breach of contract may lie against an

5   entity that is only "materially"–as opposed to "formally"–a party to the contract.  Thus, Acer

6   America's evidence does not establish that Swiss law bars the type of third-party liability that

7   Plaintiff seeks to impose.

8        Moreover, in contrast to Acer America's indeterminate evidence of Swiss contract law,

9   Plaintiff's Swiss law expert has stated that "[u]nder Swiss law, a United States affiliate of a

10  Swiss company can become a party to an employment agreement between the Swiss company

11  and an employee by assuming, in whole or in part, the obligations of the Swiss company to the

12  employee arising under the employment agreement . . . [,] provided that the employee approves

13  the assumption of obligations by the United States affiliate."  Mathiassen Decl. ISO Pl.'s Opp. to

14  Mot. to Dismiss, ¶¶ 6-7.  In the instant case, the Employment Agreement and the nearly identical

15  Italian contract provided that Plaintiff would work for Acer Europe on a part-time basis and

16  would be permanently "seconded" to San Jose.  In addition, it appears that Acer America, with

17  knowledge of these agreements, accepted responsibility for the performance of multiple

18  obligations–from paying Plaintiff's wages[10] to providing him with health care, retirement, and

19  other benefits–in exchange for Plaintiff's labor.  Given the evidence of the content of Swiss

20  contract law currently before the Court, it is certainly not "obvious" that Swiss law would bar

21  Plaintiff's breach of contract claim against Acer America.

22       Turning to California law, there is ample authority that might support Plaintiff's breach of

23  contract claim against Acer America.  For example, "under the doctrine of ratification, a

24  corporation is estopped from denying the validity or enforceability of a contract, after accepting

25

26       [10] The purported fact that Acer Europe compensated Acer America for payment of
27  Plaintiff's salary, *see supra* note 9, does not eliminate the significance of the "obligation" that
    Acer America appears to have assumed in paying approximately seventy-five percent of
28  Plaintiff's wages.

1   performance and making payment on account thereof." *Gaillard v. Natomas Co.*, 208 Cal. App.

2   3d 1250, 1273-74 (1989) (citing *Berry v. Maywood Mut. W. Co. No. One*, 13 Cal. 2d 185, 190

3   (1939)).  It is entirely possible, as Plaintiff alleges, that "Acer America ratified, and adopted, the

4   Employment Agreement by accepting Dr. Hammerl's services with knowledge of the

5   Agreement."  Pl.'s Reply at 6:28-7:1.

6        Separately, Plaintiff might well be able to adduce evidence of the parties' course of

7   dealings to suggest that they intended Acer America to accept and perform certain duties under

8   the contract.  In that case, again, it would be of no consequence that Acer America did not sign

9   the Employment Agreement.  In *Zelkin v. Caruso Discount Corp.*, 186 Cal. App. 2d 802 (1960),

10   for example, the court rejected arguments by the plaintiff's putative employers that they could not

11   be bound to an employment contract because they had not signed it.  The court held that extrinsic

12   evidence revealed the parties' intent "that these several contracts should cover plaintiff's

13   employment . . . [,] [meaning that] all the defendants were, in effect, parties to the written

14   agreement." *Id*. at 806-07.  Plaintiff contends that "Acer America and Acer Europe were part of

15   a joint venture or partnership under the Acer group of companies in hiring plaintiff as the chief

16   legal officer of each."  Pl.'s Reply at 8:20-22.  Whether or not the current record supports Acer

17   America's liability under this theory, it certainly "would be premature at this time to deny

18   [P]laintiff an opportunity to prove this relationship and thus joint liability." *Id*. at 8:22-23.  By

19   extension, it is not "obvious" in any way that Plaintiff lacks a viable claim for breach of contract

20   against Acer America.

21                 **III. CONCLUSION**

22        Defendant's attempt to demonstrate fraudulent joinder rests on a series of highly nuanced

23   legal and factual arguments.  Setting aside the Court's disagreement with Defendant's

24   characterization of the facts and of much of the relevant legal authority, the nature of these

25   arguments reveals that it is anything but "obvious" that Plaintiff cannot state a viable claim

26   against Acer America.  At best, Acer America disagrees with Plaintiff's interpretation of the

27   relevant law and facts, which hardly makes its joinder "fraudulent."  Even if this were a

28   "borderline" case, any doubt would have to be resolved in Plaintiff's favor. *See Ballesteros v.*

1    *Am. Standard Ins. Co. of Wisc.*, 436 F. Supp. 2d 1070, 1072 (D. Ariz. 2006) (citing *Albi v. Street*

2    *& Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944)).  But this is not such a case.  Plaintiff's

3    motion will be granted and the action will be remanded to the Superior Court.

4

5

6    **IT IS SO ORDERED**

7

8    DATED: 1/5/09

9                                                    _____

10                                                   JEREMY FOGEL
                                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Order has been served upon the following persons:

Joseph Charles Liburt jliburt@orrick.com, tmcbride@orrick.com

Sitthikit Chariyasatit schariyasatit@orrick.com

Thomas John Klitgaard tjk@dillinghammurphy.com

William Francis Murphy wfm@dillinghammurphy.com

18